UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEMETRIUS C. HARDING,

                Plaintiff,

v.

WARDEN J. BENZEL, SERGEANT JOHNSTON, C.O. GILMORE, C.O. MORALES, LIEUTENANT BECK, PAM SHURPIT, FOOD SERVICE MANAGER BOB, RENEE SCHULLER, and ELIZABETH BARZYK,

                Defendants.

Case No. 22-CV-1002-JPS

**ORDER**

Plaintiff Demetrius C. Harding, an inmate confined at Redgranite Correctional Institution ("RCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On November 1, 2022, the Court ordered Plaintiff to pay an initial partial filing fee of $29.45. ECF No. 8. Plaintiff paid that fee on November 8, 2022. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 5. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.     **SCREENING THE COMPLAINT**

    **2.1    Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

At all times relevant to the complaint, Plaintiff was housed in Dodge Correctional Institution ("DCI"). ECF No. 1 at 1. Plaintiff names defendants Warden J. Benzel ("Benzel"), Sergeant Johnston ("Johnston"), Correctional Officer Gilmore ("Gilmore"), Correctional Officer Morales ("Morales"), Lieutenant Beck ("Beck"), Food Service Administrator Pam Shurpit ("Shurpit"), Food Service Manager Bob ("Bob"), Nurse Renee Schuller, ("Schuller"), and Elizabeth Barzyk ("Barzyk"). *Id.*

Plaintiff alleges that on February 15, 2022, Gilmore delivered his meal on a styrofoam container. *Id.* While chewing his food, Plaintiff felt something very sharp puncture his gums. *Id.* Plaintiff immediately spit out the food, but he could still feel the object pierced up between his teeth and gums. *Id.* Plaintiff was in pain and could feel his mouth filling up with blood. *Id.* Plaintiff then used his fingernails to pinch the object before pulling it out. *Id.* The object was a staple. *Id.* Plaintiff's mouth was still bleeding and his gums were throbbing with excruciating pain. *Id.*

When Gilmore reached Plaintiff's cell, Plaintiff informed him of the incident and showed him the staple and blood. *Id.* at 2. Gilmore collected

the styrofoam container and staple and then told Plaintiff to rinse his mouth out with salt water. *Id.* Plaintiff asked Gilmore if he knew who had dealt with Plaintiff's food prior to serving it to him. *Id.* Gilmore provided that only staff open the lids to the containers upon arriving to the Restrictive Housing Unit ("RHU") to make sure nothing is missing. *Id.* Plaintiff asked Gilmore how the staple ended up in his food, but Gilmore claimed to have no knowledge on the subject. *Id.* Plaintiff received another meal, but he was unable to eat it due to his injury. *Id.*

Shortly after, Morales approached his cell door and informed him that Beck was called, and a nurse would check his mouth. *Id.* Barzyk examined Plaintiff in a small medical room and used a mini flashlight to look into Plaintiff's mouth for approximately ten seconds before checking his blood pressure and oxygen levels. *Id.* Barzyk did nothing to treat Plaintiff's pain and she did not rinse his mouth.

Later that day, Plaintiff submitted a Health Service Request ("HSR") to receive Tylenol, mouthwash, and some antibiotics to clean and treat his injury. *Id.* Plaintiff also informed health services that he was experiencing excruciating pain in his gums, especially when he ate. *Id.* No one responded to Plaintiff's request. *Id.*

After submitting a second HSR, Schuller approached his cell door on February 22, 2022 at approximately 11:00 am; Schuller only informed him that he would be seen the following day. *Id.* At this point, Plaintiff's mouth and cheek were badly swollen. *Id.* Powers approached Plaintiff's cell to tell him a nurse requested to see him. *Id.* Plaintiff met with Schuller who checked his blood pressure, oxygen levels, and temperature. Schuller asked him a few questions before using a mini flashlight to examine Plaintiff's mouth for approximately thirteen seconds. *Id.* Schuller informed Plaintiff

he would be receiving some Tylenol or Ibuprofen. *Id.* Powers escorted Plaintiff back to his cell. Plaintiff did not understand why his medical needs were not addressed. *Id.* at 3. Plaintiff purports that a reasonable medical professional would have known it was obvious to immediately clean a wound from a metal puncture.

Plaintiff wrote to Benzel but he never received any response. *Id.* Plaintiff states he would not have been injured if Shurpit and Bob had exercised ordinary care to remove harmful objects from food. *Id.* Plaintiff now constantly fears that he may ingest something harmful while eating prison food. *Id.*

### 2.3 Analysis

First, Plaintiff may proceed on an Eighth Amendment deliberate-indifference claim against Barzyk and Schuller for their indifference to Plaintiff's serious medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)).

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742,

753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

Plaintiff alleges that he has suffered excruciating pain from the bleeding injury in his mouth and that Barzyk and Schuller denied him proper care. He alleges that Barzyk denied him any pain medication. He alleges that both Barzyk and Schuller denied him any treatment to clean the wound and that the proper course of treatment would have been obvious to any medical professional. At the pleadings stage, the Court finds that Plaintiff's allegations sufficiently state an Eighth Amendment deliberate-indifference claim to a serious medical need against Barzyk and Schuller.

Plaintiff may not, however, proceed on an Eighth Amendment claim against the non-medical defendants, Benzel, Johnston, Gilmore, Morales, and Beck. Non-medical officials are entitled to "rely on the expertise of medical personnel" and "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). It is only when a nonmedical official entirely ignores an inmate's complaints or has sufficient notice of "an excessive risk to inmate health or safety" that he may be found deliberately indifferent for not taking action. *Id.* (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)). In this case, Plaintiff saw medical professionals, Barzyk and Schuller, for his injury on the day it happened and then again several days later. The non-medical defendants were therefore entitled to rely on the expertise of the medical professionals. As such, the Court will dismiss Benzel, Johnston, Gilmore, Morales, and Beck from this case for the failure to state a claim against them.

Second, Plaintiff asserts a state-law negligence claim against Shurpit and Bob for failing to train the food staff to exercise reasonable care in the food preparation. To sustain a claim for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). A district court may exercise supplemental jurisdiction over state law claims that "are so related to claims in the action" over which the Court has "original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction is not appropriate merely because the claims are "tangentially related" or share a broad factual background. *See Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009). "Instead, the question is whether the proof necessary for the state claim overlaps with the proof necessary for the federal claim." *Birdo v. Mathis*, Case No. 15-cv-456, 2015 WL 3948150, at *3 (S.D. Ill. June 26, 2015 (citations omitted).

Plaintiff seeks to assert a negligence claim against Shurpit and Bob based on a failure to train the food staff to exercise reasonable care in the food preparation. But the evidence necessary for Plaintiff to succeed on such a claim will not overlap with the evidence necessary for him to succeed on his federal claim. As such, the Court will not exercise supplemental jurisdiction over this state-law claim. The Court will accordingly dismiss Shurpit and Bob from this action. Although relief in federal court is foreclosed to Plaintiff on a state-law negligence claim, he may pursue these claims in state court.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment deliberate indifference to a serious medical need against Defendants Barzyk and Schuller.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 5, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Benzel, Johnston, Gilmore, Morales, Beck, Shurpit, and Bob be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on **Defendants Barzyk and Schuller**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $324.94 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance

with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 8th day of March, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.